IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT PATRICK TAYLOR, #319578 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-04-2782 |
| | * | |
| CORRECTIONAL OFFICER LEWIS | | |
| CORRECTIONAL OFFICER LAVA | | |
| MAJOR THOMAS | * | |
| TWO UNKNOWN CORRECTIONAL | | |
| OFFICERS | * | |
| In their individual capacities | | |
| Defendants. | * | |

*****

MEMORANDUM OPINION

I.   Procedural Background

    This 42 U.S.C. § 1983 civil rights complaint for compensatory and punitive damages involves allegations that Plaintiff was denied necessary asthma medication when transported to the Baltimore Central Booking and Intake Center ("BCBIC") on June 16, 2004, and was subsequently subject to a series of brutal assaults by various BCBIC officers that same day. Paper No. 1. Plaintiff additionally claims that while he had a big lump on his forehead and blood coming out of his mouth, he was not taken to the medical department until June 18, 2004, and then only given a cursory examination by a nurse, who checked the bump on his head and his respiration. (*Id*.) Plaintiff asserts that the nurse was very unprofessional in that she did not examine him with his medical files present. (*Id.*)

Currently pending before this Court is the Motion for Summary Judgment filed by Defendant Lewis[1] and Plaintiff's Opposition thereto. (Paper Nos. 12 & 17). The Court shall rule on the dispositive motion without oral hearing. *See* Local Rule 105.6. (D. Md. 2004).

II.     Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997)(*citing Anderson,* 477 U.S. at 255). If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Further, the non-moving party may not rest upon matters pleaded in his complaint, but must, by factual affidavit or the like, respond to the motion to show that there is a genuine issue for trial. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(e).

---

[1] Service of process was not accepted on Defendants Lava or Thomas. (*See* Paper No. 14). According to Defendant Lewis, she is the only Defendant "that could be identified by the Warden's Office of BCBIC, based upon the description of Defendants contained in the Complaint." (Paper No. 12 at 1, n. 1).

III.  <u>Allegations and Facts</u>

According to the Declaration of former BCBIC Warden Susan Murphy, there is no administrative record of the use of force being employed against Plaintiff on June 16, 2004. (Paper No. 12, Murphy Decl.) Rather, the limited record presented by Defendant Lewis shows that on June 16, 2004, Plaintiff was processed as part of a routine booking procedure. (*Id*.). Lewis further argues that she had no interaction with Plaintiff on the date in question as she did not arrive for her assignment at the BCBIC booking window until 90 minutes after Plaintiff was processed. (Paper No. 12, Murphy Decl., Exs. 1 & 2). Defendant Lewis states that on June 18, 2004, Plaintiff saw Dr. Abebe at BCBIC, at which time Plaintiff voiced a complaint that he suffered injuries as a result of being assaulted by correctional staff two days earlier. (*Id*., Murphy Decl., Ex. 3 at 42). She asserts that Dr. Abebe concluded that Plaintiff was alert and oriented, had no difficulty ambulating, and was being manipulative.[2] (*Id*.).

Defendant Lewis argues that Plaintiff's claims against her must fail in the absence of any proof that she was personally connected to any alleged violation of his constitutional rights. Lewis further alleges that Plaintiff cannot meet the elements of an excessive force complaint because he has failed to demonstrate that he suffered a cognizable injury as a result of the alleged incident.[3]

For his part, Plaintiff maintains that he has six inmate witnesses who saw the entire assault with a "clear and unobstructed" view.[4] (Paper No. 17). He further asserts that medical documentation clearly

---

[2] Defendant Lewis attaches Plaintiff's medical record related to his confinement at BCBIC and incarceration at Division of Correction facilities. (Paper No. 12, Ex. 3).

[3] Defendant Lewis does not directly address Plaintiff's allegation that he was denied medical care by correctional officers on June 16, 2004.

[4] These inmates are identified by name and place of incarceration in the Division of Correction. (Paper No. 17, Ex. 2).

3

describes multiple injuries to his forehead and back of the head, as described in his original Complaint, and that he continues to experience ongoing migraine headaches and blurred vision as a result of the June 2004 assault. (*Id*.). Plaintiff maintains the offender activity log is incomplete in that it only reflects intake processing activity up to 2:50 p.m. on June 16, 2004. (Paper No. 17). He alleges that Defendant Lewis was physically present and witnessed the entire assault incident, which occurred shortly after 4:30 p.m. on June 16, 2004. (*Id*.) He claims that she was one of the eight correctional officers "directly or collaterally involved in the assault and knowingly withheld knowledge of the assault...." (*Id*.). In support of his factual claims, Plaintiff provides a "chronological time-line" of events relating to the use of force incident. (*Id*., Ex. 7).

IV.   Analysis

The application of force involved in a detainee's confinement is evaluated under the Fourteenth Amendment's Due Process Clause. Under that standard, the use of force violates the Due Process Clause if it is intended as punishment. *United States v. Cobb*, 905 F.2d 784, 788-789 (4th Cir. 1990); *Bibum v. Prince George's County*, 85 F.Supp.2d 557, 562 (D. Md. 2000). Punitive intent may be inferred when the application of the force was not reasonably related to a legitimate non-punitive objective. *Cobb*, 905 F.2d at 789. Further, under Fourth Circuit caselaw, this Court evaluates the extent of the alleged injuries under co-extensive Eighth Amendment standards. *Grayson v. Peed*, 195 F.3d 692, 696-697 (4th Cir. 1999). The application of force which results in injuries found to be *de minimis* does not constitute excessive force under the Fourteenth Amendment. *Riley v. Dorton*, 115 F.3d 1159, 1167-68 (4th Cir. 1997); *see also Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998).

There is no dispute that on June 16, 2004, Plaintiff, who at that time was a Division of Correction inmate, was taken into custody on an outstanding charge of contempt of court for the failure to appear, and

scheduled to appear in the District Court for Baltimore City on June 17, 2004, for a bail review hearing. He was processed on the charge at BCBIC from approximately 12:20 p.m. to 2:50 p.m. on June 16, 2004.

What, if any, incident occurred between Plaintiff and correctional officers at BCBIC after 4:00 p.m. on June 16, 2004, remains in material dispute. Defendant Lewis states that there is no record of an incident.[5] Plaintiff continues to claim that upon arrival at BCBIC he was placed in a holding cell with no ventilation and that this caused him to be on the verge of an asthma attack. He maintains that at 4:00 p.m. his cell door was opened and he and two other prisoners were allowed into the hallway for fresh air. Plaintiff acknowledges that after he was twice instructed to lock into a new holding cell by an unnamed female officer, he remained in the hallway because he was "in the onslaught of an asthma attack" and asked to see a lieutenant or sergeant for medical assistance. He alleges that the female officer got upset with him, called a 10-10 code for "officer in need of assistance," and eight additional officers arrived on the scene, with one of the officers placing an armlock around Plaintiff's neck and throwing Plaintiff into the cell.

Plaintiff further claims that at approximately 4:30 p.m. he laid on his back on the cell floor and began to repeatedly kick the cell door. An unidentified lieutenant and major, along with five correctional officers came upon the cell and opened the door. Plaintiff alleges that the lieutenant punched him in the forehead and kicked him in the head area, causing him to suffer a bleeding lip and a big knot in back of his head.

---

[5] Through the declaration of BCBIC Warden Murphy, Defendant Lewis claims that there is no record of an incident involving Plaintiff and correctional officers on that date; that she did not come on duty until approximately 3:00 p.m., some 90 minutes after Plaintiff was processed; and that there is no record that she interacted with Plaintiff. Defendant Lewis does not, however, provide any personal declaration or affidavit attesting to these material facts.

5

There is no dispute that Plaintiff was sent to sick-call two days after the alleged incident. Plaintiff was seemingly called for sick-call due to respiratory problems,[6] but while seen he voiced a complaint that he had been physically assaulted by correctional officers on June 16, 2004, was refused medical treatment by officers, and had a lump on his forehead and back of his head. He requested an x-ray of his rib area. Plaintiff's respiratory system was found to be normal and he was declared to be able to ambulate without difficulty. Neither Nurse Adams nor Dr. Abebe, however, made any direct reference in the sick-call form as to what, if any, physical injuries were objectively seen on Plaintiff's face and head.[7] Rib x-rays were not ordered.

Neither Defendant Lewis nor Plaintiff has submitted personal affidavit or declarations. Nonetheless, because there is a material dispute with regard to the use of force, Defendant Lewis's involvement in the alleged incident during the afternoon of June 16, 2004, and Plaintiff's injuries arising out of the incident, the Motion for Summary Judgment is hereby denied.

A separate Order shall be entered denying the Motion for Summary Judgment and appointing counsel in this matter.

Date:   July 6, 2005                         /s/
                                             RICHARD D. BENNETT
                                             UNITED STATES DISTRICT JUDGE

---

[6] It is unclear from the sick-call form whether Plaintiff was seen by Nurse Adams and/or Dr. Abebe on June 18, 2004. (Paper No. 12, Ex. 3 at 42).

[7] It is not clear when Plaintiff was transferred back to the Division of Correction from BCBIC. Approximately nine days after the alleged incident, Plaintiff filed a sick-call request complaining about a blister on his lip. (Paper No. 12, Ex. 3 at 44). On July 5, 2004, Plaintiff filed a sick-call slip complaining of an open sore on his lip, a severe headache, and a swollen throat. (*Id*, Ex. 3 at 43). On or about July 20, 2004, he complained of a facial rash. (*Id.*, Ex. 3 at 39-41.) The record shows that Plaintiff filed sick-call slips and was examined by health care staff from September 2005, to January 2005, with regard to complaints of facial boils and rashes, colds, coughs, throat infections, liver problems and a swollen leg from an alleged insect or rodent bite. (*Id.*, Ex. 3 at 26-38, 57-72, 74-84). On January 2, 2005, he complained of a headache, seemingly related to cold symptoms. (*Id.*, Ex. 3 at 33).